**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Bankruptcy No. 21-21061-JAD |
| INNOVATIVE CONSTRUCTION, INC., | Chapter 7 |
| Debtor. | Related to Docket No. 1 |
| | Hearing: June 15, 2021 @10:00 a.m. |
| LAWRENCE COUNTY TAX CLAIM BUREAU, | Docket No. _____ |
| Movant. | |
| vs. | |
| INNOVATIVE CONSTRUCTION, INC., | |
| Respondent. | |

**LAWRENCE COUNTY TAX CLAIM BUREAU'S**
**MOTION TO DISMISS CASE WITH PREJUDICE**

NOW COMES, Lawrence County Tax Claim Bureau, by and through its counsel, Cohen Seglias Pallas Greenhall & Furman, P.C., and files this Motion to Dismiss Case with Prejudice, stating as follows:

**I.    PARTIES**

1. On April 30, 2021, Innovative Construction, Inc. (the "Debtor") commenced this case by filing a single asset Voluntary Petition under Chapter 7 of the United States Bankruptcy Code.

2. Lawrence County Tax Claim Bureau (the "Bureau") is a party-in-interest in the above-captioned matter under the provisions of the Bankruptcy Code. The Bureau is a political

1

subdivision of the County of Lawrence, Pennsylvania. The Bureau is the tax collector for all delinquent taxes for the Lawrence County Treasurer, the Union Area School District, and the Union Township Tax Collector ("Taxing Bodies"). The Taxing Bodies are owed approximately $450,000.00 in outstanding real estate taxes on the Debtor's real estate located at 1465 Sampson Street, New Castle, PA 16101 (the "Sampson Street Property"). The Sampson Street Property is the Debtor's sole asset.

## II.    SUMMARY

3.    The Debtor has not paid any real estate taxes on the Sampson Street Property since 2009, shortly after it acquired the property. There is also a first mortgage on the Sampson Street Property held by Michael Monsour ("Monsour") in connection with a loan granted by Monsour to the Debtor on April 25, 2008 in the original principal amount of $150,000.00 ("Monsour Mortgage"). According to a recent writ of execution that was issued in Monsour's mortgage foreclosure action (which was originally commenced in the Court of Common Pleas of Lawrence County on October 16. 2009 at Case No. 2009-11641 [the "Foreclosure Action"]), the amount owed on the Monsour Mortgage as of June 30, 2020 is $537,201.94. Accordingly, the amount owed by the Debtor to the Taxing Bodies and Monsour is approximately $1,000,000.00. The Sampson Street Property is worth significantly less than $1,000,000.00.

4.    This is the Debtor's fifth bankruptcy filing since 2011. The instant case was filed solely in order to stay the Bureau's free and clear judicial tax sale that was scheduled to occur on April 30, 2021. The Debtor has been gaming the system with virtual impunity for over ten (10) years. As the Debtor and its counsel are well aware, tax sales typically only occur in Lawrence

County twice in a twelve (12) month period. Upset tax sales occur in September and subsequent free and clear judicial sales occur in the following April.

5. As this motions shall amply demonstrate, the Debtor's conduct over the past decade warrants makes it imperative that this Court not only dismiss the Debtor's bankruptcy case, but to do so with prejudice and to bar the Debtor from any future bankruptcy filings for two (2) years. This is necessary in order to allow ample time for the Bureau to expose the Sampson Street Property to a judicial free and clear tax sale and to put an end to the Debtor's bad faith conduct. Notwithstanding the Bureau's diligent efforts to sell the property, the Debtor has used the courts to shield its audacious conduct, all to the detriment of the Taxing Bodies and the local residents of the community. This abuse of the system and the bankruptcy process must end.

### III.     BACKGROUND

6. The background facts of this case are almost impossible to believe. After extensive litigation between Monsour and the Debtor, a judgment was entered in the Foreclosure Action on February 17, 2011. In the court's order memorializing the parties' settlement and consent judgment, the court noted that Monsour agreed not to execute on the judgment until March 19, 2011. A true and correct copy of the Foreclosure Action docket is marked as **Exhibit "A",** attached hereto and made a part hereof[1].

7. Before Monsour could schedule a sheriff's sale, the Debtor filed a Chapter 11 bankruptcy case on March 21, 2011 at Case No. 11-21666-JAD ("First Bankruptcy Case"). On

---

[1] This Motion to Dismiss is being filed solely for and on behalf of the Bureau. However, a recitation of the background facts of this case as well as the Debtor's bad faith conduct, must include the Foreclosure Action. In this regard, if Monsour had conducted a sheriff's sale of the Sampson Street Property, the real estate taxes would have been paid.

3

April 27, 2011, the First Bankruptcy Case was dismissed for the Debtor's failure to file its Schedules (First Bankruptcy Case, Docket No. 11).

8. Subsequently, Monsour scheduled a sheriff's sale of the Sampson Street Property on September 14, 2011 and the Bureau scheduled an upset tax sale on September 30, 2011. However, prior to the scheduled foreclosure and tax sales, the Debtor filed another Chapter 11 bankruptcy case on September 12, 2011 at Case No. 11-25757-JAD ("Second Bankruptcy Case").

9. The Debtor's conduct in the Second Bankruptcy Case was particularly noteworthy. As this Honorable Court discussed in its September 9, 2012 Memorandum Order Appointing Chapter 11 Trustee and Other Relief, the Debtor, among other things: 1) failed to respond to discovery propounded by Monsour; 2) did not have any meaningful earnings throughout the pendency of the case; 3) failed to timely submit financial documents; 4) provided a description of its reorganization plan was that "nonsensical at best"; 5) failed to provide evidence that it was current on all of its tax obligations; 6) failed to make any adequate protection payments to its secured creditors; and 7) failed to come forward with any meaningful evidence that its Chapter 11 case and Plan were being prosecuted in good faith. A true and correct copy of Judge Deller's Memorandum Order is marked as **Exhibit "B"**, attached hereto and made a part hereof.

10. On January 8, 2013, Judge Deller dismissed the Second Bankruptcy Case with prejudice and barred the Debtor from filing another bankruptcy case for 180 days. A true and correct copy of Judge Deller's January 8, 2013 Order is marked as **Exhibit "C"**, attached hereto and made a part hereof. During the Second Bankruptcy Case, the Debtor made one payment in the amount of $9,700.00 to the appointed trustee, which was ultimately used to pay the trustee's

4

fees and costs, with the remaining small balance reimbursed to the Debtor (Second Bankruptcy Case, Docket Nos. 228 and 229).

11. After the Second Bankruptcy Case was dismissed, the Bureau scheduled an upset sale on October 25, 2013. However, on the morning of the scheduled sale, the Debtor filed an emergency petition and obtained an order staying the tax sale for 180 days. A true and correct copy of the Debtor's October 25, 2013 petition and order granting same is collectively marked as **Exhibit "D"**, attached hereto and made a part hereof. In the emergency petition, the Debtor indicated that it was in the process of refinancing and that it would pay a substantial portion of the delinquent taxes within ninety (90) days. The Debtor never submitted any payment.

12. Monsour issued execution and scheduled another sheriff's sale of the Sampson Street Property on January 8, 2014. On January 7, 2014, the day before the scheduled sheriff's sale, the Debtor filed a Chapter 7 bankruptcy case at Case No. 14-20079-JAD ("Third Bankruptcy Case").

13. In the Third Bankruptcy Case, the Trustee abandoned the Sampson Street Property and said abandonment was approved by this Honorable Court on February 5, 2015 (Third Bankruptcy Case, Docket Nos. 26 and 34). The Third Bankruptcy case was deemed fully administrated by the Trustee on October 23, 2015 (Third Bankruptcy Case, Docket No. 49) and a Final Decree was signed by this Honorable Court and filed of record on January 13, 2016 (Third Bankruptcy Case, Docket No. 50).

14. In the meantime, and as a result of the abandonment of the property, Monsour reissued the writ of execution in the Foreclosure Case and scheduled another sheriff's sale for June 8, 2015. This sale was rescheduled for January 13, 2016. However, on January 12, 2016, the day

5

before the Final Decree was entered in the Third Bankruptcy Case, the Debtor filed *another* Chapter 11 bankruptcy case at Case No. 16-20088-JAD ("Fourth Bankruptcy Case").

15. Like the prior cases, the Fourth Bankruptcy Case proved to be nothing more than a sham. See, for example, the U.S. Trustee's Objection to the Debtor's Disclosure Statement filed in the Fourth Bankruptcy Case at Docket No. 40. After almost two years, the Debtor proved incapable of even getting a disclosure statement approved. This case was ultimately dismissed with prejudice by this Honorable Court on November 7, 2017 and the Debtor was barred from filing bankruptcy under any chapter for one-hundred eighty (180) days. A true and correct copy of Judge Deller's November 7, 2017 Order is marked as **Exhibit "E"**, attached hereto and made a part hereof.

16. The Bureau scheduled another upset tax sale of the Sampson Street Property on September 28, 2018. However, September 26, 2018, the Debtor obtained an order continuing the sale to December 17, 2018. A true and correct copy of the Debtor's September 26, 2018 petition and related order are collectively is marked as **Exhibit "F"**, attached hereto and made a part hereof. In its petition, the Debtor alleged that it was negotiating a partnership agreement that would generate funds to pay the taxes, and that it intended to pay the Bureau $1,000 per month until "he is able to bring the taxes current…." Apparently the partnership agreement was not consummated because the Debtor never submitted a payment.

17. The Bureau scheduled another upset tax sale on September 27, 2019. On cue, the Debtor filed a petition to stay the tax sale on September 12, 2019. A true and correct copy of the Debtor's September 12, 2019 petition and related order are collectively is marked as **Exhibit "G"**, This time the Debtor indicated that it had entered into a sales contract to sell the business and that

a sale would occur within ninety (90) days. The Debtor claimed that the taxes would be paid from the sale proceeds. In light of the Debtor's representations to the court, the sale was stayed for ninety (90) days and the Debtor was ordered to pay $5,000 within seven (7) days and $5,000 per month thereafter. Not surprisingly, the sale apparently did not close, as the Debtor never submitted a payment.

18. The Bureau scheduled another upset tax sale of the Sampson Street Property on September 25, 2020. Predictably, on September 23, 2020 the Debtor filed a petition to stay the sale. A true and correct copy of the Debtor's September 23, 2020 petition and related order are collectively is marked as **Exhibit "H"**, attached hereto and made a part hereof. If nothing else, by filing the petition, the Debtor and its counsel proved that they had not yet exhausted their store of creative lies and excuses. In this regard, the Debtor requested a stay of the sale in order to allow for the completion of a transaction with an investor who was purportedly going to pay in excess of $500,000.00 by October 15, 2020.

19. The court actually *denied* the Debtor's September 23, 2020 petition and the upset sale proceeded as scheduled. Since the upset tax sale was subject to all liens, and the taxes alone exceeded $400,000.00, there were no bidders. Nonetheless, the funding referenced by the Debtor in its petition apparently never materialized and the Debtor never paid off the taxes as promised.

20. On April 14, 2021 an Order was issued by the Court of Common Pleas of Lawrence County scheduling a free and clear judicial sale of the Sampson Street Property for April 30, 2021. As anticipated by the Bureau, on April 29, 2021, the Debtor filed the instant bankruptcy case ("Fifth Bankruptcy Case").

21. The Debtor commenced its Fifth Bankruptcy Case by filing a bare bankruptcy petition. The Debtor claimed in its petition that it had only filed one other bankruptcy case in the prior eight (8) years. However, of great significance, the Debtor's bare filing elicited a standard docket entry that the case would be dismissed pursuant to Local Rule 1017-2 if the Debtor failed file its Schedules et al., by May 13, 2021 (Fifth Bankruptcy Case, Docket No. 3).

22. *In all likelihood, the Debtor has no intention of filing these documents.* In fact, the Debtor obviously only filed the Fifth Bankruptcy Case in order to forestall the Bureau's free and clear tax sale. This bankruptcy filing is no different than any of the Debtor's prior filings. The sole and exclusive purpose of the filing was to avoid paying the Bureau and Monsour.

## IV. LEGAL ANALYSIS

23. While there is a general presumption that debtors file bankruptcy petitions in good faith, under 11 U.S.C. § 707(a), the court may, after notice and hearing, dismiss a case under Chapter 7 "for cause."

24. Although § 707(a) fails to mention the lack of good faith as a ground for dismissal, the Third Circuit has interpreted this statute as "allow[ing] a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *In re Falch,* 450 B.R. 88, 93 (Bankr.E.D.Pa.2011)

25. Once a movant "calls into question" a debtor's good faith, it becomes the debtor's burden to establish that the petition was filed in good faith. *Tamecki*, 229 F.3d at 208. "Generally the facts surrounding good faith will be determined by circumstantial evidence," as "[i]t is unlikely that a debtor will ever acknowledge its own bad faith." *In re Y.J. Sons & Co.,* 212 B.R. 793, 801 (D.N.J.1997) (quoting *In re Roxy Real Estate Co., Inc.,* 170 B.R. 571, 573 (E.D.Pa.1993)). "An

assessment of a debtor's good faith requires consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy." *Perlin v. Hitachi Capital America Corp.,* 497 F.3d 364, 372 (3d Cir.2007) (citing *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 118 (3d Cir.2004)). The decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court.[3] *Perlin,* 497 F.3d at 372; *In re Tamecki*, at 207.

26. In *In re Glunk*, the court offered an "expansive list of factors" for consideration when evaluating whether to dismiss a chapter 7 case for bad faith. These factors included, among others things: whether the debtor made no effort to repay his debts; the unfairness of the use of Chapter 7; whether the debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors; whether the debtor employed a deliberate and persistent pattern of evading a single major creditor; and whether there are multiple bankruptcy filings or other procedural "gymnastics." *In re Glunk,* 342 B.R. 717, 730 (Bankr.E.D.Pa. 2006) (citing *In re Keobapha,* 279 B.R. 49, 52 (Bankr.D.Conn.2002).

27. In light of the background history of this case, it would be difficult, if not impossible, to find a more egregious example of a bad faith filing.

28. The Debtor commenced its Fifth Bankruptcy Case by filing a bare bankruptcy petition. The Debtor falsely claimed in its petition that it had only filed one other bankruptcy case in the prior eight (8) years.

29. However, of great significance and concern, the Debtor's bare filing elicited a standard docket entry that the case would be dismissed pursuant to Local Rule 1017-2 if the Debtor failed file its Schedules et al., by May 13, 2021 (Fifth Bankruptcy Case, Docket No. 3). *In all*

*likelihood, the Debtor has no intention of filing these documents and is happily awaiting the dismissal.*

30. The Debtor obviously only filed the Fifth Bankruptcy Case in order to forestall the Bureau's free and clear tax sale. This bankruptcy filing is no different than any of the Debtor's prior filings. *The sole and exclusive purpose of the filing was to avoid paying the Bureau and Monsour.*

31. The Debtor has spent the past decade abusing the state and bankruptcy court systems in order to avoid paying for its mortgage and real estate taxes. As a result, the real estate taxes are approaching $500,000.00.

32. This bankruptcy case, like all the Debtor's prior filings, was filed in bad faith and should be dismissed not because of Debtor's failure to comply with Local Rule 1017-2, but instead, for cause pursuant to 11 U.S.C. § 707(a).

33. As the recited background makes abundantly clear, barring this Debtor from filing another bankruptcy for a mere one hundred eighty (180) days is not sufficient. Instead, this egregiously abusive filer should be barred from filing another case under any chapter for two (2) years. As the Debtor and its counsel are well aware, tax sales typically only occur in Lawrence County twice in a twelve (12) month period. Upset tax sales occur in September and subsequent free and clear judicial sales occur in the following April. A two (2) year ban is warranted by the Debtor's conduct, and necessary to ensure that the Bureau has sufficient time to schedule and conduct another free and clear judicial sale.

34. The Bureau reserves the right to file a motion for sanctions and for counsel fees against the Debtor and its Counsel pursuant to Fed.R.Bank.P. 9011.

WHEREFORE, Movant, Lawrence County Tax Claim Bureau, respectfully requests an order of this Court dismissing the Debtor's bankruptcy with prejudice and barring the Debtor from filing another bankruptcy case under any chapter for a period of two (2) years, and for such further and additional relief as this Honorable Court deems just and reasonable.

Respectfully submitted,

COHEN SEGLIAS PALLAS
GREENHALL & FURMAN, P.C.

Dated: May 13, 2021

By: /s/ James McNally
James McNally, Esquire
Pa. ID No. 78341
525 William Penn Place, Suite 3005
Pittsburgh, PA  15219
Phone: (412) 434-5530
jmcnally@cohenseglias.com

# IN THE UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | Bankruptcy No. 21-21061-JAD |
| **INNOVATIVE CONSTRUCTION, INC.,** | Chapter 7 |
| | Related to Docket No. 1 |
| **Debtor.** | |
| | Hearing: June 15, 2021 @10:00 a.m. |
| **LAWRENCE COUNTY TAX CLAIM BUREAU,** | Docket No. _____ |
| **Movant.** | |
| vs. | |
| **INNOVATIVE CONSTRUCTION, INC.,** | |
| **Respondent.** | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within Motion to Dismiss to Case with Prejudice, along with the Notice of Hearing was served this 13th day of May, 2021, via First-Class United States Mail, postage prepaid and/or electronic means, upon the following:

Debtor's Attorney:
Paula J. Cialella, Esq.
113 North Mercer St.
New Castle, PA 16101
paula@cialellalaw.com

Debtor:
Innovative Construction, Inc.
1465 Sampson Street
New Castle, PA 16101

U.S. Trustee:
Office of the U.S. Trustee
Liberty Center
1001 Liberty Avenue, Suite 970
Pittsburgh, PA 15222

Chapter 7 Trustee:
Charles Zebley, Jr, Esquire
P.O. Box 2124
Uniontown PA 15401

/s/ James McNally, Esq.
James McNally, Esquire
Pa. ID No. 78341
525 William Penn Place, Suite 3005
Pittsburgh, PA  15219
Phone:  (412) 434-5530
jmcnally@cohenseglias.com
